**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**RASHAWN HANESWORTH,**

                              **Petitioner,**

               **-v-**                                    **04-CV-0145S(Sr)**

**GARY GREENE,**

                    **Respondent.**

_____

## REPORT, RECOMMENDATION AND ORDER

               This matter was referred to the undersigned by the Hon. William S.

Skretny, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #14.


               Petitioner Rashawn Hanesworth, an inmate of the New York State

Department of Corrections, commenced this proceeding _pro se_, pursuant to 28 U.S.C.

§ 2254, challenging his conviction upon a plea of guilty before the Hon. Russell

Buscaglia to the crimes of murder, second degree, in violation of New York State Penal

Law § 125.25[4],[1] and assault, first degree, in violation of New York State Penal Law

§ 120.10[3].[2]

_____

    [1] New York Penal Law § 125.25[4] provides that a person is guilty of murder in the second degree
when, under circumstances evincing a depraved indifference to human life, and being eighteen years old
or more, the defendant recklessly engages in conduct which creates a grave risk of serious physical injury
or death to another person less than eleven years old and thereby causes the death of such person.

    [2] New York Penal Law § 120.10[3] provides that a person is guilty of assault in the first degree
when, under circumstances evincing a depraved indifference to human life, he recklessly engages in
conduct which creates a grave risk of death to another person, and thereby causes serious physical injury
to another person.

For the following reasons, it is recommended that the petition be denied.

## BACKGROUND

On the morning of October 6, 1999, Courtney Lewis left her ten-month-old daughter, Ayonna Lewis Fortson and her twenty-two month-old daughter, Neve Lewis, alone with petitioner while she went grocery shopping.  2/16/2000 Transcript, pp.12 & 15.   Petitioner admitted that he struck Ayonna Lewis Fortson twice with his fist in her abdomen and that he struck Neve Lewis once in the abdomen while they were in his care.  2/16/2000 Transcript, pp.17-22.  Ayonna Lewis Fortson died due to blunt force trauma to her abdomen and Neve Lewis spent several weeks in intensive care as a result of blunt force trauma to her abdomen.  2/16/2000 Transcript, pp.12-14.

The petitioner was subject to a four count indictment charging: (1) murder, second degree in violation of Penal Law § 125.25[4]; (2) manslaughter, first degree in violation of Penal Law § 125.20[4]; (3) assault, first degree in violation of Penal Law § 120.10[3]; and (4) assault, second degree in violation of Penal Law § 120.05[9].  As a result of these charges, petitioner faced the possibility of a term of imprisonment of 50 years to life.  2/16/2000 Transcript, p.8.

On February 16, 2000, the date scheduled for a Huntley hearing, the petitioner and his attorney appeared before the Hon. Russell Buscaglia and pleaded guilty to the charge of murder, second degree with respect to Ayonna Lewis Fortson and assault, first degree with respect to Neve Lewis.  2/16/2000 Transcript.  The prosecutor informed the Court that "the condition of the plea with regard to the People's

conditions, since he's pleading only to the first and third count, is that the defendant waive his right to appeal to the plea."  2/16/2000 Transcript, pp.2-3.

During the course of the plea colloquy, petitioner responded affirmatively to the Court's inquiry as to whether petitioner felt he "had enough time to talk to" his attorney and whether he was "satisfied with his services."  2/16/2000 Transcript, p.4. The petitioner denied being threatened or coerced to enter into the plea and confirmed that he was "entering it knowingly, intelligently, voluntarily of [his] own free will after speaking with [his] attorney."  2/16/2000 Transcript, p.4.  The Court informed petitioner that:

> When you enter a plea of guilty it's the same as if we had a trial and you were convicted after trial.  It has the same force and effect in law as a conviction after trial.

2/16/2000 Transcript. p.4.  Petitioner indicated that he understood.  2/16/2000 Transcript, p.5.  Petitioner also indicated his understanding that he was giving up his right to a trial by jury with representation by an attorney free of charge, as well as his right to remain silent and confront witnesses.  2/16/2000 Transcript, pp.5-6.  The following colloquy then took place:

> Q.        What you're pleading guilty to is, under the first count of this indictment, is murder in the second degree. That's a Class A-1 felony.  You face a maximum of twenty-five years to life in prison and a minimum for that count is fifteen year to life in prison.  So that the sentence could be anywhere between fifteen to life and twenty-five to life.  Do you understand that?
>
> A.        Yes.
>
> Q.        You understand that when I say fifteen to life, that means you must do the fifteen years as a minimum, or if you

were sentenced to twenty-five to life, you must do the twenty-five years as a minimum.  Do you understand that?

A.  Yes.

* * *

Q.  All right.  Under the third count of this indictment, assault in the first degree, that's a Class B felony, you face a maximum of twenty-five years in jail.  That's a determinate sentence. . . . You have to do the twenty-five years with very little time off for good behavior.  Do you understand that's the maximum on that count?

A.  Yes.

* * *

Q.  Now, I've talked to your attorney, I've talked to the assistant district attorney, what I've told them, what I'll commit to you is that when you come back for your sentence that the most I will give you in jail . . . the maximum term I will give you in jail is that twenty-five to life sentence.  It's possible I could sentence you to twenty-five to life and then add on another twenty-five years for the assault count.  I'm not going to do that.  The most I will sentence you to is twenty-five years to life.  I'm not saying I'm going to give that to you, but that's the most I'm going to sentence you to.  Do you understand that?

A.  Yes, sir.

Q.  All right.  Has anyone from the court made any promises or commitments to you as to what your sentence is going to be?

A.  No.

Q.  Anyone from your attorney's office, your attorney or his office, the assistant district attorney or his office or anyone else made any other promises or any other commitments as to what your sentence is going to be?

A.  No.

Court:      Now, prior to entering this plea, Mr. Johnson you
asked for an opportunity to talk to the defendant's mother.
Have you had that opportunity?

Johnson: Yes, Judge. As a matter of fact, I spoke to his
mother because he is eighteen years old. . . . I thought that it
was best to discuss this matter with his mother considering
the fact that potentially if he goes to trial he would be facing
fifty years to life, his mother was under the impression that it
would be better for him to take the plea offer and to allow me
to submit information to you that may mitigate.  I also spoke
to Mr. Hanesworth regarding that same situation, so I have
approval from his mother and I have certainly approval from
Mr. Hanesworth to suggest to the Court that he enter this
plea for those . . . purposes . . . also that my client has
indicated that his basis for taking the plea . . . is to avoid a
trial thereby avoiding unfortunate revisiting of the situation by
the victims, certainly his family, avoiding the County having
the necessity to fund a trial . . . .

* * *

Court:      Mr. Hanesworth, I take it you feel you've had
enough time to talk with your attorney, you've had enough
time to speak with your mother, you've had [enough] time to
think about what you're doing and you're prepared to enter
this plea at this time, is that right?

A.          Yes.

2/16/2000 Transcript, pp.6-11.  The Court then confirmed the petitioner was

withdrawing his omnibus motion, including his motion for a Huntley hearing.  2/16/2000

Transcript, pp.1-12.

The petitioner then plead guilty to the charges of murder, second degree

and assault first degree, acknowledging that he recklessly caused grave risk of serious

physical injury and evinced a depraved indifference to human life when he struck

Ayonna Lewis Fortson, age ten months, in the abdomen, resulting in her death and that

he recklessly caused grave risk of serious physical injury and evinced depraved

indifference to human life when he struck Neve Lewis, who was less than two years old,

in the abdomen and caused serious physical injury to her liver.  2/16/2000 Transcript,

pp.12-15 & 25-26.


At sentencing, petitioner's attorney relied upon the psychological report of

Brian S. Joseph, M.D., F.A.P.A., which was based upon Dr. Joseph's interview of

petitioner and review of records pertaining to this incident, as well as his review of

petitioner's educational testing and medical records from the Erie County Medical

Center and Western New York Children's Psychiatric Center, where petitioner was

hospitalized following allegations of sexual abuse by his father, as well as records from

Baker Hall, in Lackawanna, where petitioner resided for approximately two years until

the age of 15.  5/25/2000 Transcript, p.12 & 5/8/ 2008 Exhibit, pp.95-97.


Dr. Joseph opined that petitioner

has demonstrated many of the symptoms of Post Traumatic
Stress Disorder, which is not [an] uncommon[] finding in
people who have been sexually abused as children.  He has
been suicidal through the years and never fully stabilized,
although there have been periods of relative calm
interspersed with agitation. . . .

. . . I feel that this young man was placed in a crisis situation
while he was babysitting these two children.  Intolerable
psychological stresses began to mount and it is my
considered opinion that he felt overwhelmed as the
children's crying increasingly reminded him of his own past
abuse, shame, and anger, and he was unable to quiet them.
Then, he erupted in an impulsive manner and lashed out
angrily at all the crying children represented.

He, himself, hasn't had any criminal history, nor any serious
history of substance abuse, and by all accounts he was a

> stable child, up until his father's first perpetration of sexual
> abuse.  This all suggests that much of his maladjusted
> behavior since, has, been the result of the two incidents as
> described above.  Again, I feel he was in an emotional crisis
> when he lashed out at the children, and did not, in fact,
> intend to murder them, the tragic consequences
> notwithstanding.  I feel he was overwhelmed with emotions,
> consistent with what I understand the law characterizes as
> "extreme emotional disturbance."  I feel that this man has
> been psychiatrically troubled, versus criminal, as evidenced
> by 5 mental health hospitalizations between the ages of 10
> and 15, and continues to this day to suffer from Post
> Traumatic Stress Disorder.

5/8/2008 Exhibit, pp.98-99.  Dr. Joseph appeared at the sentencing and reiterated his

diagnosis of post traumatic stress disorder and his opinion that petitioner "was in a

crisis situation" at the time of the incident.  5/25/2000 Transcript, p.13.


Petitioner's counsel reiterated petitioner's history of abuse and resulting

emotional instability, and emphasized petitioner's immediate expression of remorse and

acceptance of responsibility by agreeing to plead guilty to the top charges in the

indictment in support of his request that the Court sentence petitioner to 15 years to life.

5/25/2000 Transcript, pp.17-19.  Petitioner also expressed his remorse and acceptance

of responsibility for his actions to the Court.  5/25/2000 Transcript, pp.19-23.


The Court sentenced petitioner to a minimum period of imprisonment of

twenty-five years and a maximum of life for the murder, second degree conviction and a

concurrent determinate sentence of twenty-five years for the assault, first degree

conviction.  5/25/2000 Transcript, p.27.

On appeal to the New York State Supreme Court, Appellate Division, Fourth Department, assigned counsel argued that: (1) petitioner was deprived of his constitutional right to effective assistance of counsel, rendering his plea of guilty involuntary, when trial counsel abandoned the suppression motion and recommended that petitioner plead guilty to the highest charges in the indictment and waive his right to appeal in return for a sentencing commitment of 25 years to life; (2) petitioner did not knowingly, intelligently, or voluntarily waive his right to appeal; and (3) petitioner's sentence was unduly harsh and excessive. *See* Exhibit submitted 5/20/2004.  The Appellate Division affirmed the judgment, stating:

> We reject the contention of defendant that he was denied effective assistance of counsel and that, as a result, his plea of guilty was not knowingly, intelligently and voluntarily entered.  Contrary to defendant's contention, defense counsel's advice to defendant to accept the plea offer before the Huntley hearing was conducted does not constitute ineffective assistance of counsel.  Nor was defense counsel ineffective in advising defendant to accept an offer exposing him to the maximum terms of imprisonment on each count when the offer also provided that those terms would run concurrently rather than consecutively.  Contrary to the further contention of defendant, the record establishes that his waiver of the right to appeal was knowing, intelligent and voluntary, and that waiver encompasses defendant's challenge to the severity of the sentence.

*People v. Hanesworth*, 302 A.D.2d 976 (4th Dep't 2003) (internal citations omitted).


Counsel petitioned the New York State Court of Appeals to review whether petitioner was deprived of his right to effective assistance of counsel, rendering his guilty plea unknowing, unintelligent and involuntary and whether petitioner's purported waiver of appeal was invalid.  *See* Exhibit submitted 5/20/2004.  On March

31, 2003, the Hon. George Bundy Smith denied leave to appeal.  *People v. Hanesworth*, 99 N.Y.2d 629 (2003).

Petitioner commenced this action on March 4, 2004, alleging that he was questioned without being informed of his rights pursuant to *Miranda v. Arizona*; his attorney forced him to plead guilty and failed to pursue the suppression motion or post-traumatic stress disorder as a defense; and his sentence was harsh and excessive. Dkt. #1.

By Notice of Motion dated July 12, 2004, petitioner asked that his petition be stayed while he returned to the New York state courts to pursue a CPL §440.10 motion alleging ineffective assistance of counsel.  Dkt. #16.  The Court exercised its discretion to stay proceedings with respect to petitioner's exhausted claims, and to dismiss without prejudice his claim of ineffective assistance of counsel.  Dkt. #17.

Petitioner moved to vacate the judgment pursuant to CPL §440.10 on the grounds that: (1) the plea was not voluntary and was entered into as a result of ineffective assistance of trial counsel; (2) the plea was coerced; and (3) his statements were not voluntary and were obtained in violation of *Miranda v. Arizona*.  *See* Exhibit submitted May 8, 2008.  Petitioner claimed that his counsel advised him that he would receive a sentence not to exceed 15 years if he entered the plea and that his counsel informed him that the suppression motion had been heard and denied.  *See* Exhibit

submitted May 8, 2008.  Petitioner also expressed dissatisfaction with his attorney's

refusal to pursue the suppression motion despite the alleged lack of *Miranda* warnings

and his inability to negotiate a more favorable plea despite his lack of criminal record

and history of abuse and resulting emotional disturbance.  *See* Exhibit submitted May

8, 2008.  Given his history of psychiatric hospitalizations and low IQ, petitioner claimed

that his counsel should have questioned his competence.  *See* Exhibit submitted May

8, 2008.

In a Memorandum and Order entered June 14, 2005, the Hon. Russell

Buscaglia wrote:

> In affirming the judgment, the Appellate Division held that counsel was not ineffective in advising the defendant to plead guilty before a *Huntley* hearing was conducted.  That court also determined that the defendant pleaded guilty knowingly, intelligently and voluntarily. Defendant has not provided evidence supporting his allegations that counsel informed him that the court had denied suppression and that [the] court would not impose a sentence exceeding 15 years.  There is no reasonable basis to credit those claims.  Therefore, the defendant's motion is denied as to these particular issues.  (CPL § 440.10[2][a]; CPL § 440.30[4][d]).
> The court finds that sufficient facts appear in the record relative to defendant's mental state to have permitted the Appellate Division to consider whether the failure to apply for a competency examination constituted ineffective assistance.  Since defendant did not raise that issue on direct appeal, he is not entitled to collateral review (CPL § 440.10[2][c]; *People v. Cooks*, 67 N.Y.2d 100, 103).
> Contrary to defendant's assertion, counsel secured a favorable disposition of the indictment.  The defendant has not alleged the existence of a viable defense to the charges.  If he were convicted after a trial, the court could have imposed consecutive sentences resulting in an aggregate sentence of 50 years to life.

*See* Exhibit submitted May 8, 2008.  Justice Buscaglia instructed petitioner as to the

procedure for appealing his Order.  *See* Exhibit submitted May 8, 2008.


Petitioner submitted a supplemental petition for writ of *habeas corpus* on

May 10, 2005, alleging as follows:

> Trial counsel intentionally failed to [pursue] post-traumatic
> stress disorder as a defense, when strong evidence was
> presented to the Court indicating that the defendant had
> serious psychiatric issues, concerning his competency and
> state of mind.  It was trial counsel who failed to [pursue]
> suppression hearing concerning *Miranda* violations.  Instead
> of counsel fighting to dismiss the prosecution[']s evidence,
> he gave the D.A. everything he needed to stand fast at the
> highest "plea" offer or win at a jury trial.  Counsel was
> extremely ineffective in defendant's case!! – It was also
> counsel who coerced the defendant into pleading guilty to
> the highest count of indictment; with the promise that if
> defendant were to plead guilty now, a deal had already been
> made . . . [Trial Counsel] and the D.A. had agreed that
> defendant would not receive a sentence to exceed 15 years,
> if defendant were to plead guilty that early in the criminal
> proceedings.  Through[]out the entire proceeding against the
> defendant, counsel did absolutely nothing that was of benefit
> to the defendant or the case at hand. *Extreme
> ineffectiveness of trial counsel.*

Dkt. #22, p.3.  In support of his petition, petitioner provided the Court with copies of

statements the prosecution intended to use against him at trial.  Dkt. #23.


On July 13, 2005, petitioner attempted to appeal the denial of the motion

to vacate his conviction, but the Appellate Division returned petitioner's papers with

instructions on how to properly file the appeal.  There is no indication that petitioner

complied with those instructions and perfected an appeal of the denial of that motion.

See Dkt. #33, p.5 (Respondent states that "[d]espite being specifically informed of the

defects in the filing, the defendant made no attempt to refile his application in conformance with the court's rules.").

## DISCUSSION

### Exhaustion & Procedural Default

Before a federal court can address the merits of any federal issue contained in a petition for a writ of *habeas corpus,* the petitioner must have "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44 (1999).  "Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained." *Hogan v. Ward,* 998 F. Supp. 290, 293 (W.D.N.Y. 1998), *citing Daye v. Attorney General of the State of New York,* 696 F.2d 186, 190 n.3 (2d Cir. 1982); *see O'Sullivan*, 526 U.S. at 839-40 ("a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement.").

The same concerns that bar federal *habeas* review of unexhausted claims also bar federal *habeas* review of claims that have been procedurally defaulted in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.").

-12-

Where a state prisoner has failed to exhaust or has procedurally defaulted a claim by failing to raise it on direct review before the state court, federal *habeas* review is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  The scope of this exception is very limited and the burden of proof very heavy.  *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 171-72 (2d Cir. 2000), *citing Sawyer v. Whitley*, 505 U.S. 333, 336 (1992); *see also, Calderon v. Thompson*, 523 U.S. 538, 559-60 (1998) (the general standard requires that the petitioner establish actual innocence by clear and convincing evidence).

**AEDPA Standard of Review**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), where a state court has adjudicated the merits of a petitioner's claim, relief may not be granted unless the state court's adjudication:

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The amended standard of § 2254(d)(1) requires the federal court to give considerably more deference to the state court's legal determinations than did the pre-AEDPA standard.  *Marcelin v. Garvin*, No. 97 CIV 2296, 1999 WL 977221, at *6 (S.D.N.Y. Oct. 26, 1999); *Tascarella v. Reynolds*, No. 97 CV 111, 1998 WL 912010, at *1-2 (W.D.N.Y. Dec. 30, 1998).  As stated by the United States Supreme Court:

> § 2254(d)(1) places a new constraint on the power of a federal *habeas* court to grant a state prisoner's application for a writ of *habeas corpus* with respect to claims adjudicated on the merits in state court. . . . Under the "contrary to" clause, a federal *habeas* court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J.); *see Sacco v. Cooksey*, 214 F.3d 270, 273 (2d Cir. 2000), *cert. denied*, 531 U.S. 1156 (2001).  Thus, a federal court may only grant *habeas* relief where the state court's application of clearly established federal law was not only erroneous, but objectively unreasonable.  *Williams*, 529 U.S. at 409; *see Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter.").

**Ineffective Assistance of Counsel**

Petitioner argued before the New York State Appellate Division and Court of Appeals that his plea of guilty was involuntary due to the ineffectiveness of his

-14-

counsel in failing to conduct the suppression hearing before recommending the plea

and failing to negotiate a more favorable plea.  As a result, this issue is exhausted.

Since the Appellate Division denied this claim on the merits, this Court cannot grant the

application for writ of *habeas corpus* unless the state court's decision was contrary to or

involved an unreasonable application of clearly established federal law or was based on

an unreasonable determination of the facts.  28 U.S.C. § 2254.


      The arguments set forth in petitioner's motion to vacate his conviction are

not exhausted, because petitioner failed to perfect his appeal to the Appellate Division.

As petitioner's time to raise these issues before the Appellate Division has passed,

petitioner's claim of ineffective assistance of counsel based on his attorney's failure to

question petitioner's competence is procedurally defaulted.


> [A] guilty plea represents a break in the chain of events
> which has preceded it in the criminal process.  When a
> criminal defendant has solemnly admitted in open court that
> he is in fact guilty of the offense with which he is charged, he
> may not thereafter raise independent claims relating to the
> deprivation of constitutional rights that occurred prior to the
> entry of the guilty plea. He may only attack the voluntary and
> intelligent character of the guilty plea by showing that the
> advice he received from counsel was not within the range of
> competence demanded of attorneys in criminal cases.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973), *citing McMann v. Richardson*, 397 U.S.

759, 770-71 (1970).  "In other words, 'the issue [is] not the merits of these

[independent] claims as such, but rather whether the guilty plea had been made

intelligently and voluntarily with the advice of competent counsel.'" *United States v.*

*Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996), *quoting Tollett*, 411 U.S. at 265.  Thus, a

petitioner's unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of the plea. *Vasquez v. Parrott*, 397 F. Supp.2d 452, 463 (S.D.N.Y. 2005). However, the voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it," including the strength of the evidence and the potential for a more lenient sentence following the plea. *Brady v. United States*, 397 U.S. 742, 749 (1970).

In the instant case, it was not unreasonable for petitioner's attorney to recommend withdrawing the *Huntley* hearing and entering a plea of guilty in an effort to gain a sentence closer to the minimum range based upon petitioner's expression of remorse and acceptance of responsibility, as well as the presentation of evidence of petitioner's history of abuse and resulting emotional instability. Trial counsel followed through with this strategy by engaging a psychiatrist to interview petitioner and review his records, resulting in a written report outlining petitioner's tragic childhood and diagnosing petitioner with post traumatic stress disorder. Dr. Joseph's report and oral presentation to the Court at sentencing attempted to portray petitioner as an individual with serious psychiatric issues[3] rather than an individual motivated by criminal intent.

---

[3] While the issue is procedurally defaulted, the Court notes that despite his psychiatric history, nothing in Dr. Joseph's report suggests that petitioner lacked the capacity to consult with his lawyer with a reasonable degree of rational understanding, including a rational as well as factual understanding of the proceedings. *See Smith v. Rock*, 554 F. Supp.2d 505, 519 (S.D.N.Y. 2008), *quoting Dusky v. United States*, 362 U.S. 402 (1960) (defining legal competency).

Although trial counsel's strategy was unsuccessful in obtaining a sentence closer to the minimum possible sentence of 15 years to life, the strategy itself was not unreasonable.  Regardless of the outcome of the suppression hearing, it is apparent that  petitioner was alone with the children during the time frame in which they each suffered serious injury to the abdomen.  Moreover, the sentencing commitment for the plea eliminated the possibility of a consecutive determinate sentence of 25 years, which is a significant difference between the possibility of parole at age 43 or no possibility of parole until age 68.  Accordingly, petitioner has failed to demonstrate that his attorney's representation fell below an objective standard of reasonableness.

**Voluntariness of the Plea**

Petitioner argued that his plea of guilty was not voluntary before the New York State Appellate Division and Court of Appeals.  As a result, this issue is exhausted.  Since the Appellate Division denied this claim on the merits, this Court cannot grant the application for writ of *habeas corpus* unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  28 U.S.C. § 2254.

The arguments set forth in petitioner's motion to vacate his conviction are not exhausted, because petitioner failed to perfect his appeal to the Appellate Division. As petitioner's time to raise these issues before the Appellate Division has passed, petitioner's claim that his plea was involuntary because trial counsel advised that the

suppression motion had been denied and that he would not receive a prison sentence exceeding 15 years is procedurally defaulted.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985), *quoting North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  For the plea to be voluntary, it is axiomatic that the defendant must at least be competent to proceed.  *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004).  In addition, he must have an awareness of the true nature of the charge against him, a rational as well as factual understanding of the proceedings against him, and have knowledge of the nature of the constitutional protections he will forego by entering his plea.  *Id.*  "The voluntariness of a guilty plea is reviewed by examining the totality of the relevant circumstances."  *Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir. 2006).

Upon review of the record of petitioner's plea allocution, the Court discerns no basis to conclude that the state court's determination that the petitioner's plea was knowing, intelligent and voluntary was unreasonable.  The Court specifically explained to petitioner that his plea of guilty would have the same force and effect in law as a conviction after trial and that by pleading guilty, petitioner was surrendering his right to a trial by jury with representation by an attorney free of charge, as well as his right to remain silent and confront witnesses.  2/16/2000 Transcript, pp.5-6.  Petitioner indicated that he understood that he was giving up these rights.  2/16/2000 Transcript,

-18-

pp.5-6.  Petitioner also expressed his understanding of the charges, his sentencing

exposure under those charges and the Judge's sentencing commitment on the plea.

2/16/2000 Transcript, pp.6-8.

Petitioner specifically stated that he understood that he could be

sentenced to a term of imprisonment of 25 years to life.  2/16/2000 Transcript, p.8.  He

expressly denied that anyone had made any other promise or commitment regarding

his sentence.  2/16/2000 Transcript, p.8.  He also denied that anyone was threatening

or coercing him into entering the plea and agreed that he was entering the plea

knowingly, intelligently, voluntarily and of his own free will after consulting with his

attorney.  2/16/2000 Transcript, p.4.  He also agreed that he had been afforded

sufficient opportunity to speak with his attorney and his mother regarding the proposed

plea and that he had been afforded sufficient time to think about what he was doing.

2/16/2000 Transcript, pp.10-11.  His responses to the Court's questions were entirely

appropriate and suggest no concern regarding his capacity to comprehend the

proceedings.  Accordingly, it is recommended that petitioner's application for a writ of

*habeas corpus* be denied with respect to his claim that the plea was not voluntary,

intelligent or knowing.

"Solemn declarations in open court carry a strong presumption of verity."

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Moreover, the "subsequent presentation

of conclusory allegations unsupported by specifics is subject to summary dismissal, as

are contentions that in the face of the record are wholly incredible."  *Id.*  Thus, even if

-19-

the Court were to set aside the issue of exhaustion and procedural default, petitioner's assertion that trial counsel coerced him into pleading guilty to the highest counts of the indictment by promising that petitioner would be sentenced to a term of imprisonment which would not exceed fifteen years is insufficient to overcome his statement to the contrary during the plea proceeding.  Moreover, the record clearly reflects that the Court confirmed that petitioner was choosing to withdraw his suppression motion and enter a plea of guilty, thereby contradicting any assertion that the petitioner understood that the suppression motion had been denied.

**Motion to Suppress**

Because petitioner's plea of guilty was knowing, voluntary and intelligent, petitioner is barred from litigating in federal court any alleged deprivation of constitutional rights that occurred prior to the entry of his guilty plea.  *See Tollett*, 411 U.S. at 267 ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").  Accordingly, this Court cannot review petitioner's argument that his statements were obtained in violation of *Miranda v. Arizona*.  *See Bridgefourth v. Artus,* 475 F. Supp.2d 261, 268 (W.D.N.Y. 2007) (petitioner's claim that he was not read the Miranda warnings "concerns an alleged constitutional violation antecedent to his guilty plea and, therefore, is precluded from being challenged on federal habeas review.").

**Harsh and Excessive Sentence**

Petitioner argued that his sentence was harsh and excessive before the New York State Appellate Division and argued that the waiver of appeal, on which the Appellate Division based its decision not to consider petitioner's challenge to the sentence, was invalid before the Court of Appeals.  As a result, this issue is exhausted.

However, "a sentence imposed within the range prescribed by state law does not present a question of constitutional dimensions and therefore cannot be subject to habeas corpus review."  *McColly v. Brunelle*, 980 F. Supp. 691, 697 (W.D.N.Y. 1997); *see Kressner v. Supras*, 826 F. Supp. 657, 663 (W.D.N.Y. 1993); *Castro v. Sullivan*, 662 F.Supp. 745, 753 (S.D.N.Y. 1987) (collecting cases).  Petitioner was convicted of a Class A-I felony for which the New York Penal Law prescribes an indeterminate sentence of imprisonment, with a minimum sentence between 15 and 25 years and a maximum sentence of life.  New York Penal Law § 70.00 (2)(a) & (3)(a)(I). Petitioner was also convicted of a Class B violent felony, for which the New York Penal Law prescribes a determinate sentence between 5 and 25 years.  New York Penal Law § 70.02 (1)(a), (2)(a) & (3)(a).  Since the sentences imposed fall within the legal range, this Court has no basis to review petitioner's sentence.

## CONCLUSION

Based on the foregoing, it is recommended that the petition for writ of *habeas corpus* be **DENIED**.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The District Judge will ordinarily refuse to consider de novo, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order**.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to**

**comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of**

**Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and**

**Order), may result in the District Judge's refusal to consider the objection.**


The Clerk is directed to send a copy of this Report, Recommendation and

Order to the petitioner and the attorney for respondent.


DATED:      Buffalo, New York
            March 4, 2009


                                     s/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**